IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QUENTIN T. JONES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-1057 (MN) |
| | ) | |
| SCOTT CERESINI, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

**MEMORANDUM OPINION**

Quentin T. Jones – Pro se Petitioner.

Kathryn J. Garrison, Deputy Attorney General, Delaware Department of Justice, Dover, DE – Attorney for Respondents.

September 4, 2026
Wilmington, Delaware

---

[1] The caption has been amended in accordance with paragraph 4 of the Order accompanying this Memorandum Opinion.

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is Petitioner Quentin T. Jones's ("Petitioner" or "Jones") Petition under 28 U.S.C § 2254 for Writ of Habeas Corpus by a Person in State Custody. (D.I. 3). Respondents filed an Answer in opposition and Petitioner filed a Reply, an amended Reply and several supplements.[2] (D.I. 13; D.I. 18; D.I. 19; D.I. 28; D.I. 32; D.I. 35). For the reasons discussed below, the Court denies the Petition.

## I. BACKGROUND

In 2016, a jury found Petitioner guilty of two counts of first-degree rape and one count of first-degree unlawful sexual contact. (D.I. 14-1 at 4, Entry No. 48). The charges arose from Petitioner's alleged sexual abuse of his seven-year-old step-niece. *See Jones v. State* ("*Jones Appeal*"), No. 241, 2021, 2022 WL 1134744, at *1 (Del. Apr. 18, 2022); D.I. 14-14 at 266. Petitioner was declared a habitual offender and sentenced to life in prison. *See id.*; D.I. 14-1 at 6, Entry No. 70. As a result of his conviction, Petitioner was found to have violated his probation for prior convictions in three cases and sentenced to additional Level V time. (D.I. 14-17 at 21-22). Petitioner's conviction was affirmed on appeal but then vacated in postconviction proceedings because the State failed to disclose a witness's bargain for a reduced sentence in exchange for his testimony against Petitioner. *See State v. Jones*, ID No. 1502002252, 2019 WL 6726837 (Del. Super. Ct. Dec. 11, 2019); D.I. 14-1 at 9, Entry No. 101; D.I. 14-1 at 17, Entry No. 180). A new trial was ordered. (D.I. 14-1 at 17, Entry No. 180).

Counsel that had been appointed to represent Petitioner during the postconviction proceedings continued to represent Petitioner in the continued proceedings. (D.I. 14-1 at 11, Entry No. 118; D.I. 14-1 at 22, Entry No. 234). The State offered to allow Petitioner to plead to two

[2] In his Petition, Petitioner references an attached Memorandum of Law, that does not appear to have been filed. (D.I. 3 at 5).

charges of Rape in the Fourth Degree with sentencing recommendations that would result in Petitioner's release for time served. *See Jones Appeal*, 2022 WL 1134744, at *1. After meeting with Petitioner to discuss his case,[3] including the plea offer, defense counsel sent him a letter dated July 1, 2020, stating:

> Next – the plea. You have been offered a plea offer. It is my obligation to relay it to you and explain it so you can make an informed decision how you wish to proceed. The Offer is to 2 counts of Rape 4th Degree. The State is willing to discharge your violation of probation. The plea offer is to time served. That means as soon as you enter the plea, you would be released from jail and only have probation to do. Yes, you would have to register as a sex offender but it would be at Tier II. The State would agree not to move you as a habitual offender.
>
> As I explained to you, I would be willing to discuss a no contest plea with the prosecutor – that is a plea whereby you do not admit guilt but accept the consequences of the plea. The prosecutor has advised me that he has been in touch with the victim's family and they are willing and ready to testify. If you go to trial and you lose, the State will be moving to sentence you as a habitual offender again and if successful, you will get life again. As I explained to you – this is a very tenacious but fair prosecutor. I want you to understand that while the case against you has some problems for the State, they can still win. Even if they don't get the Rape 1 – they could get a lesser charge – but with you as a habitual offender – you could still end up with a life sentence.
>
> I want you to strongly consider the plea offer because it puts this chapter behind you and allows you to have a life on the outside – away from prison. I know there would be conditions such as the sex offender registry and other things like that – but you are out and can have a good life.

(D.I. 14-15 at 268-69). Petitioner decided to accept the State's offer and met with counsel to review and complete the Plea Agreement, Immediate Sentencing Form, and Truth-In-Sentencing Guilty Plea Form ("TIS form"). (*Id.* at 108-10). In pertinent part, the Plea Agreement provided

---

3 The meeting was via videoconference, as were many of Petitioner's meetings and hearings, due to COVID-19 restrictions.

that: (1) Petitioner would plead no contest to two charges of fourth-degree rape; (2) the State would enter a *nolle prosequi* on the Unlawful Sexual Contact charge; (3) the sentence recommendation would be for fifteen years at Level V, suspended for the nearly five and half years of time served, followed by decreasing levels of supervision (the State would request both Level IV and III time and Petitioner would request just Level III) as to one of the rape counts, and fifteen years at Level V, suspended for eighteen months Level III for the second count; (4) the State would recommend that Petitioner's violations of probation ("VOP") be discharged as unimproved; (5) Petitioner would acknowledge he is a habitual offender but the State would not seek to have him declared as one; and (6) the State would not arrest or indict Petitioner in connection with another case in which he was being investigated.[4] (D.I. 14-15 at 108).

The Delaware Superior Court held a plea hearing, during which it conducted a plea colloquy.[5] (D.I. 14-15 at 111-51). The colloquy included the following:

> THE COURT: We have a court reporter here, Mr. Jones, that is going to take all this down in case it is necessary at any later point in your case. First of all, Mr. Jones, you understand that what is being proposed here today is that you will plead no contest to two charges of rape in the fourth degree; do you understand that, sir?
>
> THE DEFENDANT: Yes, sir. Yes, I do.
>
> THE COURT: Have you had a chance to review your case with your counsel, . . . ?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have they answered your questions?
>
> THE DEFENDANT: Yes.

---

4 As explained infra, this other case was developed through the Delaware Department of Justice's Sexual Assault Kit Initiative ("the 2008 rape case").

5 With Petitioner's consent, the plea colloquy was held via videoconference due to COVID-19 restrictions. (D.I. 14-1 at 19, Entry Nos. 194, 197; D.I. 14-15 at 101-07, 112-14).

THE COURT: Are you satisfied with their representation of you?

THE DEFENDANT: Yes.

THE COURT: All right. Have you been able to review with them both the charges and the evidence against you and what they thought about what their opinions were about that, have you been able to do that?

THE DEFENDANT: No. Not necessarily, no.

THE COURT: Well, are you in a position here today, do you feel you have had sufficient representation, legal representation to enter this plea?

THE DEFENDANT: Yes.

THE COURT: All right. You also understand, Mr. Jones, that if I accept this plea there will be no trial in your case?

THE DEFENDANT: Yeah.

THE COURT: And you give up significant important legal rights by entering this plea and I am going to review those, list those rights or some of those important rights for you because I want to make sure you understand it. You have the right to a trial by jury. You have the right to be found guilty beyond a reasonable doubt. If your case went to trial in this Court, you would have the right to have your attorney cross-examine and ask questions of whatever witnesses were presented against you by the State of Delaware. And you have the right to present witnesses in your own defense if you desired to do so, but you would not be required to do so because you are presumed to be innocent. If you went to trial in this Court and you were not satisfied with the result, you would then have the right to appeal to the Delaware Supreme Court; do you understand those rights, sir?

THE DEFENDANT: Yes, I do.

THE COURT: Are you willing to give up those rights by entering this plea?

THE DEFENDANT: Yes.

THE COURT: All right. I have in front of me three documents that have been provided to me by your attorney. One of them is what is called a truth-in-sentencing guilty plea form. I am going to hold it up. I know it may be difficult to see in the format we have, but can

you identify that document and tell me that you reviewed it with [counsel]?

THE DEFENDANT: Yes.

THE COURT: Now, it has been signed by [defense counsel] on your behalf. Did you authorize her to sign that document?

THE DEFENDANT: Yeah.

THE COURT: I'm sorry. Can you repeat that, sir?

THE DEFENDANT: I'm sorry. Yes.

THE COURT: All right. Did you truthfully answer all the questions on that document?

THE DEFENDANT: Yes.

THE COURT: And you understand and that document tells you that no matter what agreement you have with the State, on the two rape forth degree charges I can sentence you up to 15 years at Level 5 incarceration; you understand that, sir, do you not?

THE DEFENDANT: Yes.

THE COURT: Again, sir, I didn't hear you.

THE DEFENDANT: Yes.

THE COURT: All right. You also understand that if you enter these pleas, you will be in violation of probation on the other charges that you had and that you can be sentenced up to 21 years Level 5 incarceration on those charges, as well; do you understand that, sir?

THE DEFENDANT: Yeah.

THE COURT: All right. I also have in front of me an immediate sentencing form. Can you look at that and tell me if you reviewed that document with [defense counsel] and had her sign on your behalf?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And finally, I have the plea agreement document. Can you look at that form and tell me if you reviewed that document and authorized [defense counsel] to sign on your behalf?

THE DEFENDANT: Yes.

THE COURT: You also understand, sir, that even though this plea is what is called a no-contest plea, once it's entered, for all other purposes it is as if you entered a guilty plea and certainly for sentencing it is as if you entered a plea of guilt; do you understand that, as well?

THE DEFENDANT: Yes.

THE COURT: All right. Are you doing this of your own freewill here today?

THE DEFENDANT: Yes, I am.

THE COURT: No one is forcing you to do it?

THE DEFENDANT: No. I'm not going to say so much as forced, but I'm under a lot of stress and duress right now. So no one is really forcing me, no. I can't say that I'm being forced, no.

THE COURT: Do you have any other questions you want to either direct to me or your counsel before I accept your plea?

THE DEFENDANT: Yes, I do. I have some questions for you regarding, what I am not understanding that initially my indictment was against A R -S. I'm not understanding how that a count from an alleged 2008 count can come into play with this case? I'm not understanding that.

[DEFENSE COUNSEL]: Your Honor –

THE COURT: All right. Go ahead, [defense counsel].

[DEFENSE COUNSEL]: Thank you, Your Honor. I'm sorry, I did neglect to put one thing on the record and maybe this will satisfy Mr. Jones. I did discuss this with Mr. Jones yesterday, so I know he understands. There was an allegation that had recently come to light to the defense, an allegation from 2008. [The Deputy Attorney General] candidly brought this to my attention in trying to resolve this case. And, obviously, we are grateful for that, for us not resolving this case and then coming back and charging him for that. So for the two rape four charges for which he is pleading no contest only concern the alleged victim from 2014 involving A R -S. Those are the only two charges for which he is pleading no contest. Any other case from 2008, and it says it right in the plea agreement. And I apologize and thank Mr. Jones for bringing this to my attention. It says in the plea agreement, the State agrees not to arrest or indict

Mr. Jones in connection with Investigation 7108005124, which I believe [the Deputy Attorney General] can confirm that that concerns an allegation in Seaford from 2008 involving D J.

THE COURT: So it is unrelated to the charges that we are dealing with here today?

[DEFENSE COUNSEL]: Correct, Your Honor. We are just resolving this all together because what we didn't want to happen is Mr. Jones resolves this case, the 2014 case, and then the State would come back later and deal with that. So we resolved it all together. The State is taking no action with regard to the 2008 case. The charges for which he is pleading no contest only concern the 2014 case involving A R.

THE COURT: Does that answer your question, Mr. Jones.

THE DEFENDANT: I mean, yes, but I -- yes. I'm kind of confused about the whole entire thing, but. yes, in answer to you.

[DEPUTY ATTORNEY GENERAL]: Your Honor –

THE COURT: Well, I don't want you to be confused about anything here today, all right?

THE DEFENDANT: I mean, I understand, you know, the proceeding and what's going on here today, but I'm just trying to figure out that it's an alleged complaint from 2008 and wasn't brought until July the 1st during my plea negotiations. This was never – I never received any indictment or charging document from 2008. I never received anything, Your Honor. I don't know what to say.

[DEPUTY ATTORNEY GENERAL]: Your Honor?

THE COURT: And, [Deputy Attorney General], I am going to want to hear from you in a minute. Mr. Jones, what it looks like to me is there was some investigation involving completely other charges. I know you weren't aware of them, but as I read what is being proposed to me today is that the State will not proceed on those charges. [Deputy Attorney General], can you help us out here?

[DEPUTY ATTORNEY GENERAL]: Your Honor, yes, I can. And I would like to supplement the record quickly based on what [defense counsel] said. Part of my responsibility at the Department of Justice is the Sexual Assault Kit Initiative, which is testing previously untested rape kits, which, quite frankly, should have been tested previously but were not. That is what it pertains to, a 2008

case. I do not simply go back to our records and find a 2008 investigation. Mr. Jones' DNA was located concerning a rape kit that was recently tested, which is, frankly, how my involvement came to be in this case to begin with, but also why this 2008 case is being mentioned now. It was not -- there was recently developed evidence which prompted its involvement in this case.

THE COURT: All right. Thank you. Again, Mr. Jones, does that answer the question that you have?

THE DEFENDANT: Not fully, because, Your Honor, I mean, I was in prison in 2013. I come home in 2013 from the Sussex Correctional Institutional from doing three years and at that time, Your Honor, I took a DNA test leaving out of the prison. It was a swab test. What I'm saying now is, if my DNA matched an alleged case in 2008, why wouldn't this issue be brought up in 2013 prior to anything happening before? Why now?

THE COURT: Well, I certainly cannot answer that question, Mr. Jones. Is this question significant enough in your mind that you don't want to go forward here today with your plea?

THE DEFENDANT: I mean, I want to go forward, but I'm just trying to understand it all. I'm just trying to ask, is all.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Thank you, Your Honor. Your Honor, Mr. Jones and I did have some discussion about this. Obviously, I don't have a lot of information on this case because he was neither arrested nor indicted on this case. I believe that [the Deputy Attorney General] did us a great favor by bringing this to our attention while negotiating this, because what we didn't want to happen was that we resolve this and then hereafter Mr. Jones gets arrested and indicted for another case, putting him back in jail. So that case was taken into account in resolving this one. I want to make it clear to Mr. Jones: You are not pleading to anything relating to the 2008 case. That case is being completely removed. You are not arrested for it. It will not appear on your criminal record. It has nothing to do with this case and this plea other than the requirement that you can't have contact with D J, which you told me you don't know anyway.

THE DEFENDANT: I don't know her anyway.

[DEFENSE COUNSEL]: Yes, exactly. And moreover, the condition that the State agrees not to prosecute you or arrest you for that case. So you get that benefit of that. There will be no further

> investigation on that case involving you. So we have discussed this before. And this was, the State explained that this was a part of the plea so that way it's over and done with, but you are not pleading to anything, you are making no admissions relating to the 2008 case as part of this plea.
>
> THE DEFENDANT: Thank you, . . . .
>
> [DEFENSE COUNSEL]: You are welcome.
>
> THE COURT: Does that answer your questions, Mr. Jones?
>
> THE DEFENDANT: Yes, sir. Yes, sir, Your Honor.
>
> THE COURT: All right. Now we are at the stage where this is your last chance to speak on whether you want to enter this plea or not. Before I accept your plea, is there anything else that you want to discuss or that you have on your mind about the plea? Not about the sentencing. We will get to that in a few minutes, but is there anything else you want to raise at this point?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. Then I will find that the plea to the two rape fourth degree charges that are a part of this plea agreement are knowingly, intelligently, and voluntarily entered and we will enter it in the Court records accordingly.

(D.I. 14-15 at 119-130).

After accepting the plea, the court pointed out that the TIS form did not correctly set forth the Sentencing and Accountability Commission ("SENTAC") presumptive sentence for fourth-degree rape based upon Petitioner's criminal history; the TIS form indicated up to thirty months per charge but the correct range was up to ten years per charge. (*Id.* at 131-33). Upon review of the guidelines, defense counsel acknowledged she had written the wrong presumptive sentence on the form. (*Id.* at 133). The TIS form, however, accurately identified the statutory minimum and maximum penalties. (*Id.* at 108, 122). After expressing hesitancy to impose the recommended sentence, the judge informed that parties that if they proceeded with immediate sentencing, he was going to do something substantially different than what was proposed. (*Id.* at 137-39, 145). The

Superior Court then granted defense counsel's request to continue sentencing so that counsel could submit additional information for consideration. (*Id.* at 146-49).

> Following the hearing, defense counsel wrote to Jones and expressed disappointment and surprise at what had occurred after the acceptance of Jones's *nolo contendere* plea. Defense counsel then filed a motion to withdraw Jones's plea, which was denied.
>
> Jones's relationship with defense counsel deteriorated. Defense counsel filed a motion to withdraw as Jones's counsel, and Jones filed a motion to disqualify his counsel. Both motions were granted. Jones was assigned new counsel. His new counsel filed a second motion to withdraw his plea, which was also denied. Sentencing was then scheduled, and the court imposed sentences requiring Jones to serve ten years of unsuspended Level V time followed by probation.

*See Jones Appeal*, 2022 WL 1134744, at *2 (footnote omitted). Petitioner appealed the denial of his motion to withdraw his plea, claiming that: "1) his plea was not knowing, intelligent, and voluntary; 2) he had a valid claim of legal innocence; and 3) his counsel was inadequate when he entered the plea." *See id.* at *1. On April 18, 2022, the Delaware Supreme Court affirmed the denial of Petitioner's motion to withdraw his plea. *See id.*

On May 2, 2022, Petitioner filed a timely pro se Motion for Postconviction Relief under Superior Court Rule 61 ("Rule 61 Motion"). *See State v. Jones* ("*Jones Rule 61*"), ID No. 1502002252, 2022 WL 1486180, at *1 (Del. Super. Ct. May 11, 2022). In his Rule 61 Motion, Petitioner raised three claims of ineffective assistance of counsel ("IAC"), paraphrased by the Delaware Superior Court as follows: "defense counsel misled [Petitioner] and induced him to accept the State's *nolo contendere* plea offer by (1) failing to advise him of the potential sentencing consequences under the plea agreement; (2) failing to advise him that the State's sentencing recommendations were not binding on [the court]; and (3) coercing him to accept a plea agreement with respect to offenses that were not supported by 'sufficient probable cause.'" *See id.* The Delaware Superior Court found the claims warranted summary dismissal for being "completely

conclusory" and were also barred as previously adjudicated in Petitioner's appeal of the denial of his motion to withdraw his plea. *See id.* at *2, 3. Under Delaware law, one of the factors to be considered when deciding whether the withdrawal of a plea should be permitted is whether the defendant had adequate legal counsel throughout the proceedings. *See id.* at *3. This was one of the factors on which Petitioner rested his case on appeal of his motion to withdraw, and the Delaware Superior Court found it to be "precisely what he argue[d] again" in his Rule 61 Motion. *See id.* The court, therefore, denied Petitioner's Rule 61 Motion on May 11, 2022. *See id.* at *4.

On May 13, 2022, Petitioner filed a Motion to Amend his Rule 61 Motion to raise a claim that the trial court abused its discretion. *See State v. Jones*, ID No. 1502002252, 2022 WL 1585175, at *1 (Del. Super. Ct. May 18, 2022). On May 18, 2022, the Superior Court permitted the amendment, but denied the claim as procedurally barred. *See id.* at *2. Petitioner appealed the denial of his amended Rule 61 Motion, but the appeal was dismissed as untimely on July 25, 2022. *See Jones v. State*, No. 227, 2022, 2022 WL 2934959 (Del. July 25, 2022). While Petitioner's appeal from the dismissal of his Rule 61 Motion was pending, Petitioner filed another Amended Rule 61 Motion, which the Delaware Supreme Court summarily dismissed on July 15, 2022 as procedurally barred. *See State v. Jones*, ID No. 1502002252, 2022 WL 2783812 (Del. Super. Ct. July 15, 2022). Petitioner thereafter filed the instant habeas Petition before the Court.

## II. <u>GOVERNING LEGAL PRINCIPLES</u>

### A. <u>The Antiterrorism and Effective Death Penalty Act of 1996</u>

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner "only on the ground that he is in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *See Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. <u>Exhaustion and Procedural Default</u>

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is based on principles of comity and requires a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See, e.g.*, *O'Sullivan*, 526 U.S. at 845.

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See O'Sullivan*, 526 U.S. at 842-48; *Castille v. Peoples,* 489 U.S. 346, 350-51 (1989); *Lines v. Larkins*,

208 F.3d 153, 159 (3d Cir. 2000). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (stating that petitioner meets technical requirements for exhaustion in this situation because state remedies are no longer available). Such claims, however, are procedurally defaulted. *See id.* at 750; *Lines*, 208 F.3d at 160. Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-65 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See Coleman,* 501 U.S. at 750-51; *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d. Cir. 1999). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See id.* at 494 (internal quotations omitted).

Alternatively, a federal court may excuse a procedural default if a petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. To establish actual innocence, a petitioner must present new, reliable evidence that was not presented at trial showing it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *See House v. Bell*, 547 U.S. 518, 536-38 (2006); *Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018); *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

**C. <u>Standard of Review</u>**

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" if the state court decision finally resolves the claim based on its substance, rather than on a procedural or other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1), (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 209 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons

relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is contrary to clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.*

An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014) (recognizing Supreme Court has repeatedly restated holding describing "unreasonable application"). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A petitioner must do more than convince a habeas court that the state court's decision was incorrect—he or she must show that it "was objectively unreasonable." *See Williams*, 529 U.S. at 409. To do so, a petitioner must demonstrate that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Richter*, 562 U.S. at 103. In other words, § 2254(d) preserves authority to issue a writ in "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* at 102. A habeas court cannot supersede the trial court's determination if "'[r]easonable minds reviewing the record might disagree'" about the finding in question. *See Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that § 2254(e)(1)'s clear and convincing evidence standard only pertains to state-court determinations of factual issues and § 2254(d)(2)'s unreasonable standard applies to factual decisions).

**D. <u>Ineffective Assistance of Counsel</u>**

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id*. at 689.

Under the second *Strickland* prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court may deny an ineffective assistance of counsel claim by deciding only one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

When determining whether a state court reasonably applied *Strickland* pursuant to § 2254(d)(1), the Court must review the state court decision through a doubly deferential lens. *See Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *See id.* (internal citations omitted). The question becomes not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *See id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *See id*. at 111-12. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

## III. DISCUSSION

In his timely Petition, Petitioner asserts one ground for relief: "Plea counsel 'induced' Petitioner to accept the States [sic] plea offer by via 2008 yr. case and immediate release, without advising that sentenced recommendation(s) were non-binding upon the court, and coercion, including failing to advise of the proper presumptive sentence range for offenses." (D.I. 3 at 5).

Liberally construing Petitioner's pro se filings, as this Court must,[6] Petitioner appears to base his IAC claim on the grounds that counsel was ineffective for: (1) failing to advise Petitioner that the plea sentencing recommendations were not binding on the court; (2) inducing Petitioner to accept the plea offer by leading him to believe that he would be sentenced to time served; (3) failing to advise Petitioner of the correct presumptive sentence range; and (4) inducing Petitioner to accept the plea offer by informing him about the 2008 rape case.

**A. <u>Ineffective Assistance of Counsel Claims Adjudicated on Their Merits</u>**

Respondents acknowledge that Petitioner "has exhausted his ineffective assistance claim to the extent he is arguing his plea counsel failed to advise him that the parties' plea recommendations were non-binding or that counsel induced him to enter the plea by leading him to believe that he would receive a sentence of time-served." (D.I. 13 at 21-22). These claims, as recognized by the Delaware Superior Court in its opinion denying Petitioner's Rule 61 Motion, were raised and adjudicated by the State within the context of Petitioner's second motion to withdraw his plea and the appeal thereof. *See Jones Rule 61*, 2022 WL 1486180, at *3-4.

In Petitioner's second motion to withdraw his plea, he claimed he "was not informed that sentencing would be up to the Court and that time served was but one possibility in the universe of possibilities. As such, in reliance upon communications from his counsel, [he] entered the plea with the full expectation he would be going home forthwith." (D.I. 14-15 at 256). The Delaware Superior Court judge denied the motion, stating at the hearing that:

> The most important part to me, and the factual basis for the request being made here today, and the paperwork filed on behalf of Mr. Jones, is that he claims he did not understand what he was doing, so it was not a knowing, voluntary, intelligent plea. I am relying upon the colloquy that was made at the plea hearing, and I am also relying on the paperwork that is part of that. What I am

6 See, e.g., Higgs v. Att'y. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011).

> presented here with this morning is the claim that, yes, Mr. Jones told me, agreed with me that he understood what he was doing, and he agreed with me that he understood that I could sentence him within the statutory guidelines and that I was not bound by the plea, but somehow what he was told by counsel prior to that negates that.
>
> For me, I believe that both the law and our process allows me to rely upon what the defendant tells me at a plea colloquy hearing. I think I can rely upon the statements in the plea paperwork, including the statement that says that they understand that there is no inducement for this plea, and, specifically, what Mr. Jones told me, that he understood that I could sentence him in accordance with the guidelines and up to 15 years on each charge.
>
> So it seems to me that the factual predicate for the claims made here today is not shown. In fact, just the opposite is shown. So I'm denying that motion.

(D.I. 14-15 at 307-08). In a letter to more fully explain his decision to deny the second motion to withdraw, the Delaware Superior Court judge stated:

> Mr. Jones argues his plea was not knowing or voluntary because he was promised by former counsel his sentence would be limited to "time served." This claim is at the heart of his second motion and is refuted by the facts of the case, in particular what occurred during his plea colloquy. I specifically asked Jones if he understood I could sentence him to the maximum time on the two charges to which Mr. Jones pled no contest, and up to 21 years on a violation of probation. He told me he understood. Mr. Jones also answered the standard Truth-In-Sentencing form question that he was not promised anything in return for his plea. Finally, the Plea Agreement states the parties "agree to *recommend*" the proposed sentence. I was convinced then, as I am now that Mr. Jones knew full well that I was not bound by the sentencing recommendation. I am permitted to rely upon what a defendant says at the colloquy.
>
> Mr. Jones seeks to counter these facts by alleging his lawyer told him something different. While I am skeptical of the claim, for me it is specifically rebutted by Mr. Jones' discussion with me. . . .
>
> Mr. Jones had more than adequate counsel throughout. . . . One final note. At the conclusion of the plea colloquy I asked Mr. Jones the follow[ing]:
>
>> "THE COURT: All right. Now we are at the stage where this is your last chance to speak on whether you want to enter

> this plea or not. Before I accept your plea, is there anything else that you want to discuss or than you have on your mind about the plea? Not about the sentencing. We will get to that in a few minutes, but is there anything else you want to raise at this point?"
>
> "JONES: No, sir."

(D.I. 14-13 at 47-48). The Delaware Supreme Court affirmed on appeal, reasoning:

> Jones also argues that he lacked adequate legal counsel at the time of the plea process. When considering the adequacy of legal counsel, this Court's review is "subject to a strong presumption that counsel's conduct was professionally reasonable." This Court has established two elements for finding that an attorney was ineffective in this context. First, a defendant must demonstrate that "counsel's actions fell below an objective standard of reasonableness." Second, a defendant must demonstrate that "there exists a reasonable probability that, but for counsel's unprofessional errors, [the defendant] would have chosen to proceed to trial." Furthermore, this Court has explained that when a judge is acting in the role of a factfinder, the judge "is the sole judge of credibility and therefore, this Court will not disturb conclusions of fact made by the Trial Judge when supported by competent evidence."
>
> In order to demonstrate that his counsel was inadequate, Jones must rebut a presumption that defense counsel's actions were reasonable. Jones argues that defense counsel's "written promise" to him meant that he was not provided with effective counsel during the pleading stage. This claim is undermined, however, by Jones's acknowledgement during the plea colloquy that he could be sentenced to up to 15 years of Level V time on each Rape Fourth Degree charge. He also told the court that he was satisfied with his counsel's representation. Therefore, it was not an abuse of discretion for the Superior Court to decide that defense counsel's conduct was adequate and not unreasonable.

*See Jones Appeal*, 2022 WL 1134744, at *3 (footnotes omitted) (cleaned up). These claims having been adjudicated on the merits by Delaware's highest court, the Court must review them under § 2254(d)'s deferential standard, and Petitioner will only be entitled to federal habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

Under the first prong of the § 2254(d)(1) inquiry, the Court must determine if the Delaware Supreme Court's decision was contrary to clearly established federal law. Although these claims were raised in the context of whether Petitioner's plea should be withdrawn, the Delaware Supreme Court's analysis of the factor "whether the defendant had adequate legal counsel throughout the proceedings" correctly identified the *Strickland* standards as governing Petitioner's instant IAC argument and applied those standards to the facts of his case. *See id.* (citing Delaware Supreme Court case that cites additional state court precedent, which quote state and federal precedent that cite *Strickland*). Additionally, the Delaware Supreme Court did not confront a set of facts materially indistinguishable from Supreme Court precedent and arrive at a result different from that precedent. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 (finding "a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"); *Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (finding state court decision relying on state court cases articulating the proper standard was not "contrary to" clearly established federal law).

Next, the Court must determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. The Delaware Supreme Court affirmed the Delaware Superior Court's finding that Petitioner's claims that counsel failed to inform him that the plea sentence recommendations were not binding on the court and induced him to accept the plea offer by leading him to believe he would be sentenced to time served lacked credibility. *See Jones Appeal*, 2022 WL 1134744, at *3. To rebut the Delaware Supreme and Superior Court's findings Petitioner relies on letters from counsel and his own self-serving affidavit. (D.I. 18-1 at

4-7, 10-15[7]). Counsel's July 1, 2020 letter to Petitioner explains the terms of the plea offer to Petitioner. (D.I. 14-15 at 269). Although Petitioner is correct that counsel did not state that the Court is not bound by the plea sentence recommendation in the July 1, 2020 letter, that does not in turn mean that counsel did not inform Petitioner as such. (*Id.* at 268-69). The substance of the letter, in pertinent part, informs Petitioner about the terms of the plea offer. (*Id.*). Counsel does not promise or guarantee how the court would sentence him. (*Id.*). As indicated in the letter and acknowledged by Petitioner, the letter is a summary of counsel's meeting with Petitioner earlier that day. (*Id.* at 263, 268-69). The letter indicates that the meeting was long and covered a lot of ground. (*Id.* at 268). Moreover, the letter accurately explains the plea offer.

Petitioner acknowledges that he met with counsel on July 10, 2020 via video teleconference to discuss and complete the Plea Agreement and TIS form. (*Id.* at 121-24, 265). Petitioner and counsel went through and completed both forms and Petitioner authorized counsel to sign them on his behalf. (*Id.* at 121-22). The Plea Agreement states "Recommendations/Agreement: STATE AND DEFENDANT AGREE to recommend:" followed by the terms of the agreement. (D.I. 14-15 at 108). The form clearly indicates that the sentence is only a recommendation. Additionally, the recommended sentence on the form indicates that the State planned to request "Level 4 probation prior to Level 3" but that Petitioner was going to seek "to not have Level 4 imposed," further evidencing that the Court maintained discretion. (*Id.*). Additionally, Petitioner responded to the questions on the TIS form as follows: (1) that he freely and voluntarily decided to plead no contest to the charges in his written plea agreement; (2) that he was not promised anything not stated in his written plea agreement; (3) that neither his lawyer, the State, nor anyone threatened or forced him to enter the plea; (4) that no one promised him what

7 Located in state court record at D.I. 14-15 at 262-71.

his sentence would be; (5) that he was satisfied with his lawyer's representation and that his lawyer had fully advised him of his rights; (6) that he read and understood all the information on the form; and (7) that his answers were all truthful. (D.I. 14-15 at 110). The TIS form also provides that the statutory penalty was zero to fifteen years for each of the rape charges and zero to twenty-one years for his VOP, and that his total consecutive maximum penalty was thirty years for the two rape counts and twenty-one years for the VOP. (*Id.*). ***Both the plea agreement and TIS form were reviewed and completed four days before Petitioner's plea hearing***, thereby clarifying any possible misunderstanding Petitioner may have had from the letter prior to his plea. (*Id.* at 108, 110).

During the plea colloquy Petitioner stated that he answered the questions on the TIS form truthfully. (*Id.* at 121-22). Furthermore, the judge specifically asked Petitioner if he understood that he could sentence him up to fifteen years for each rape charge no matter what the agreement was with the State, to which Petitioner replied "Yes." (*Id.* at 122). Petitioner also said he understood he could be sentenced for up to twenty-one additional years for the VOP. (*Id.* at 122-23). Petitioner further stated that he was acting on his own free will, no one was forcing him to act, and he was satisfied with his counsel's representation. (*Id.* at 119, 123-24). Finally, during the plea hearing, Petitioner was given opportunities to ask any questions he had, and he was not hesitant to do so, as evidenced by the exchange regarding the 2008 rape case. (*Id.* at 124-130). Nevertheless, Petitioner expressed no confusion regarding the conflict between the TIS form and plea colloquy compared to his current allegation that counsel led him to believe he would get a sentence of time served and failed to tell him that the plea agreement was not binding on the court.

Petitioner also relies on a statement in counsel's July 14, 2020 letter to him to support his IAC claim. The letter was sent after the plea hearing and, after recounting what occurred at the

hearing, counsel stated: "Because this was somewhat of a shock to me and because you and I had not discussed any of this – I asked for a week to notify the Court how we wish to proceed." (D.I. 14-15 at 270). Although that statement can be interpreted to indicate that counsel failed to inform Petitioner that the Court was not bound by the plea sentence recommendation, that is not the only possible, or logical, interpretation. The statement quoted above was made after counsel recounted what occurred at the plea hearing and was immediately preceded by the statement that "[t]he Court offered the option of deferring sentencing for a presentence investigation" and immediately followed by options for proceeding. (*Id.* at 270-71). Accordingly, the statement that "you and I had not discussed any of this" could simply have been referring to the fact that counsel and petitioner had not yet been able to discuss what happened at the plea hearing and what Petitioner's options were going forward. Again, the Court notes that Petitioner's own affirmations in the TIS form and plea colloquy undermine his interpretation.

The deference the AEDPA requires this Court to apply to trial court factual findings includes credibility determinations. *See* 22 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 339-40 (providing trial court is in best position to make credibility determinations and, under AEDPA, trial court factual determinations are presumed correct absent clear and convincing evidence to contrary); *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017) (stating credibility determinations are presumed correct absent clear and convincing evidence to contrary). It is well settled that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). As demonstrated above, the state court record supports the state courts' finding that Petitioner was not credible. Additionally, Petitioner is no stranger to the criminal justice system—he has pleaded guilty in at least three other cases—further diminishing his claim that he was unaware that the terms of the plea agreement were not

binding on the court. (D.I. 14-17 at 3, 4, Entry No. 15; D.I. 14-17 at 10, Entry No. 5; D.I. 14-17 at 16, 17 Entry No. 21). The Delaware Superior and Supreme Courts found Petitioner lacked credibility, and Petitioner has not presented clear and convincing evidence as is required to overcome the presumption of correctness that this Court must afford the Delaware courts' finding.

Petitioner's reliance on *Padilla v. Kentucky*, 559 U.S. 356 (2010), is misplaced. In *Padilla*, the United States Supreme Court considered whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his deportation. *See id.* Immigration consequences are not an issue in Petitioner's case.

Viewing the Delaware Supreme Court's decision under the required "doubly deferential" lens, there is certainly a reasonable argument that counsel satisfied *Strickland*'s deferential standard. For these reasons, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in finding that counsel's representation did not fall below an objective standard of reasonableness. Petitioner has failed to show that either the Delaware Supreme or Superior Court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. The state court decision was not objectively unreasonable and certainly passes the AEDPA's low threshold that federal habeas relief is precluded if reasonable minds reviewing the record might disagree about the finding in question.

Although these IAC claims can be denied for failing the first *Strickland* prong alone and the state courts did not address the prejudice prong, the Court, applying a *de novo* standard of review, nonetheless finds that Petitioner has not established prejudice. Assuming for the sake of argument that counsel failed to advise Petitioner that the plea sentence recommendation was not binding on the court and led him to believe he would be sentenced to time served, the plea colloquy

clarified that was not the case. Yet, even knowing that was not the case, Petitioner elected to plead no contest. Additionally, the fact that Petitioner faced the possibility of a life sentence if convicted at trial, as well as up to twenty-one years for his VOP and possible charges in the 2008 rape case, also negates the likelihood that Petitioner would have insisted on proceeding to trial. Therefore, Petitioner has failed to demonstrate that, but for counsel's advice, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading no contest.

For the foregoing reasons, the Court denies Petitioner's exhausted IAC claims.

## B. Procedurally Defaulted Claims

In his Reply, Petitioner states that the "sole factual issue in this case is whether the petitioner was denied . . . effective counsel, when his plea counsel during private discussions and via attorney client letters 'assured' petitioner prior to colloquy once petitioner accepted the state's plea agreement, he would be immediately released from prison to go home, without advising [Petitioner] that the Sentence Range Guidelines were non-binding on the court, via coercion." (D.I. 18 at 21). That statement suggests that the only claims presented by Petitioner are those already reviewed on their merits. Nevertheless, to the extent that Petitioner has asserted claims that trial counsel was ineffective for failing to advise him of the proper presumptive sentence range and for inducing him to accept the plea offer by informing him of the 2008 rape case, those claims fail. Respondents argue that these claims are unexhausted. (D.I. 13 at 22-23). Upon review of the state court record, the Court agrees with Respondents.

### 1. Counsel's Failure to Advise Petitioner of the Proper Presumptive Sentence Range

Petitioner raised the claim that counsel was ineffective for failing to advise him of the proper presumptive sentence range in his first motion to withdraw his plea. (D.I. 14-15 at 172-73). The Delaware Superior Court found this claim to be without merit. *See State v. Jones*, ID

No. 1502002252, 2022 WL 5530332, at *3-4 (Del. Super. Ct. Sept. 11, 2020). Petitioner, however, did not raise this claim in his appeal from the denial of his motion to withdraw his plea. (D.I. 14-13). Any further attempt to raise this issue on appeal would be time-barred. *See* Del. Supr. Ct. R. 6(a)(iii)(A) (setting 30–day filing period for direct appeals and postconviction appeals in criminal cases). Therefore, the Court must treat this claim as exhausted but procedurally defaulted, thereby precluding habeas review absent a show of cause and prejudice or a miscarriage of justice.

In his Reply, Petitioner relies on *Martinez v. Ryan*, 566 U.S. 1 (2012), to establish cause for his procedural default. (D.I. 18 at 12-21). Petitioner appears to apply *Martinez* to his claim of an "unkept sentence promise," which this Court did not find procedurally barred and reviewed on its merits, supra. (D.I. 18 at 22-33). Nevertheless, to the extent Petitioner has brought a claim that counsel was ineffective for failing to advise him of the proper presumptive sentence range, *Martinez* does not apply to establish cause for his procedural default of that claim. *Martinez* created a "narrow exception" to the general rule in *Coleman v. Thompson*, 501 U.S. 722, that ineffective assistance in state postconviction proceedings does not qualify as cause to excuse a procedural default because prisoners do not have a constitutional right to counsel in those proceedings. *See Davila v. Davis*, 582 U.S. 521, 524 (2017). The *Martinez* exception only applies to ineffective assistance of initial state postconviction counsel "as cause to overcome the default of a single claim – ineffective assistance of trial counsel." *See id.* As indicated, this claim was raised in Petitioner's first motion to withdraw his plea but not on appeal. Therefore, any potential allegation of ineffective assistance of counsel relating to the default of this claim would be one of ineffective assistance of appellate, not postconviction, counsel. Therefore, *Martinez* does not

apply.[8] Additionally, Petitioner cannot rely on any alleged ineffective assistance of appellate counsel as cause to excuse the procedural default of this claim because any such ineffective assistance of appellate counsel claim would itself be procedurally barred. *See Murray*, 477 U.S. at 488-89 (holding IAC claim must be presented to state courts as independent claim before it may be used to establish cause for procedural default).

Even if *Martinez* were applicable to Petitioner's claim, Petitioner still has not established cause for its procedural default. To satisfy *Martinez*, a petitioner must demonstrate that: (1) initial postconviction counsel was ineffective under *Strickland* for failing to raise the claim; and (2) the defaulted ineffective assistance of trial counsel claim is "substantial," or, in other words, has "some merit." *See Martinez*, 566 U.S. at 14, 17; *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019). Petitioner has not demonstrated that this defaulted IAC claim is substantial. The Third Circuit has held that a claim of IAC alleging that counsel failed to advise the defendant about a potential enhancement or upward departure at sentencing fails where an in-court colloquy clearly established the defendant's maximum potential exposure and the court's discretion in sentencing. *See, e.g.*, *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (collecting cases). As repeatedly demonstrated above, Petitioner's plea colloquy and TIS form met those

---

8 Petitioner argues that *Martinez* should apply because Delaware generally requires that IAC claims be presented in postconviction proceedings. (D.I. 18 at 16-21). Although the Delaware Supreme Court often declines to consider ineffective assistance of counsel claims in a direct appeal, *see, e.g.*, *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013), Petitioner's circumstances involve a situation where the Delaware Supreme Court did, in fact, analyze counsel's effectiveness on the grounds that were raised in the appeal from the denial of Petitioner's motion to withdraw his plea. *See Jones Appeal*, 2022 WL 1134744, at *3. The narrow exception established by *Martinez* was intended to protect prisoners when no other court has addressed their ineffective assistance of trial counsel claims, not, as in Petitioner's case, where there was a prior, meaningful opportunity to litigate the claim in state court. *See Martinez*, 566 U.S. at 9-11.

requirements. Accordingly, Petitioner has failed to demonstrate that his defaulted IAC is substantial and, therefore, has not established cause for the procedural default of this claim.

#### 2. Counsel's Alleged Ineffectiveness for Inducing Petitioner to Accept the Plea Offer by Informing Him about the 2008 Rape Case

It is even less clear whether Petitioner has intended to raise a claim that counsel induced him to accept the plea offer by informing him of the 2008 rape case, a claim which does not appear to have been raised in any of Petitioner's state court proceedings. Any attempt by Petitioner to assert this unexhausted claim in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) or second or subsequent under Rule 61(i)(2). Although Rule 61(i)(1) provides for an exception to the one-year limitations period if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated here. Similarly, the exceptions set forth in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies. Accordingly, the Court must treat this claim as exhausted but procedurally defaulted, thereby precluding habeas review absent a show of cause and prejudice or a miscarriage of justice.

Petitioner filed his Rule 61 Motion pro se. *See Jones Rule 61*, 2022 WL 1486180. The Delaware Superior Court summarily dismissed the Rule 61 Motion as procedurally barred and denied Petitioner's Motion to Appoint Postconviction Counsel. *See id.* The Court does not need to engage in an analysis of whether *Martinez* can be applied in this situation because, even assuming it does apply, Petitioner has failed to demonstrate that his defaulted IAC claim is substantial. Petitioner's underlying defaulted IAC claim amounts to nothing more than an allegation that counsel informed him that the State was investigating him for a rape in 2008, but that the State was willing to agree not to arrest or indict him in connection with that investigation

as part of his plea agreement in this case—and agreement which, in fact, came to fruition. To the extent those facts put pressure on Petitioner to accept the plea agreement, that is not inducement or coercion by counsel. To the contrary, counsel would have been ineffective if she failed to inform Petitioner about the 2008 rape case. Additionally, Petitioner's claim that counsel induced or coerced him to enter the plea is contradicted by his statements in his TIS form and during his plea colloquy. Accordingly, Petitioner's has failed to demonstrate that this claim is substantial and, therefore, he has not established cause for this IAC allegation.

#### 3. Prejudice and Miscarriage of Justice

In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence.[9] Accordingly, the Court denies Petitioner's claims that trial counsel failed to advise him of the proper presumptive sentence range and induced him to accept the plea offer by informing him of the 2008 rape case as procedurally barred from habeas review.

## IV. CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional

[9] Petitioner filed a document titled "Actual Innocent," which the Court, at Petitioner's request, voided. (D.I. 25; D.I. 29; D.I. 36). In his addition to his Motion to Void that document, Petitioner explicitly clarified that he was not asserting an actual innocence claim to overcome the procedural bars. (D.I. 28 at 5).

claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that Petitioner's claims do not warrant relief because they are either without merit or procedurally barred. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed above, the Court denies the instant Petition without an evidentiary hearing and without issuing a certificate of appealability.

The Court will issue an Order consistent with this Memorandum Opinion.